**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Wendell THOMAS, Patrick M. Roberts, Robert White, and Robert H. Maddox, Defendants-Appellants.**

**Nos. 79–1465 to 79–1467 and 79–1491.**

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1980.

Decided July 24, 1980.

Certiorari Denied Jan. 12 and Feb. 23, 1981. See 101 S.Ct. 887, 1392.

---

John W. Gerstner, Hammond, Ind., William E. Davis, East Chicago, Ind., R. Cordell Funk, Hammond, Ind., Frank J. Gray, Fort Wayne, Ind., for defendants-appellants.

Andrew B. Baker, Jr., Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, and SPRECHER and WOOD, Circuit Judges.

CASTLE, Senior Circuit Judge.

The defendants-appellants appeal their convictions for violations of 18 U.S.C. § 2313.[1] They attack the convictions for various reasons including, inter alia, the sufficiency of the evidence, admission of prejudicial evidence, and the district court's refusal to suppress evidence seized by government agents. We find these contentions to be generally without merit and affirm all of the convictions except for that of Robert White on Count II of the indictment.

## I.

In July, 1977 Eugene Klisiak, a former policeman, leased a warehouse in Hammond, Indiana to defendant Wendell Thomas. In April, 1978, while attempting to collect the rent from Thomas, Klisiak noticed Thomas and two other men cutting apart an automobile. Klisiak then notified authorities and FBI agents began surveillance of the warehouse on May 25. Between May 25 and June 8 agents observed the defendants driving several stolen cars into the warehouse. On June 8 the agents executed a search warrant for the warehouse and found engine blocks, transmissions, other auto parts, tools, and one partially disassembled car. The auto parts found were identified as having been taken from thirteen different automobiles, including the autos which agents witnessed being driven into the warehouse. Each of the defendants was subsequently charged with eleven counts of violating 18 U.S.C. § 2313, each count representing a different stolen auto.

The defendants were tried jointly. Before the start of the trial the district court granted the Government's motion to dismiss Count VII of the indictment. Following the conclusion of the Government's case, the trial court dismissed Count VI. The dismissal of Count VI was based on the government's failure to produce the owner of the vehicle upon which the count was based and the resulting failure to prove that the vehicle was indeed stolen. The jury then convicted all four defendants on eight of the remaining nine counts and acquitted them on Count III. The acquittal was apparently based on the failure of the FBI agents to recover any parts traceable to that car from the warehouse. The district court then sentenced the defendants for their convictions on Counts I, II and IV and granted defense motions for acquittal on Counts V and VIII through XI.

## II.

[1] All four defendants attack the sufficiency of the government's evidence. Maddox, Roberts and Thomas challenge the sufficiency on all three counts for which they were convicted, while White only contests the sufficiency of the evidence against him on Count II. We find that White's claim is the only valid one raised.

### A.

The claims raised by Thomas, Maddox and Roberts are generalized attacks on the Government's evidence. These attacks, however, overlook the evidence presented at trial. The warehouse in which the stolen cars were taken apart was leased to Thomas. Each of these defendants spent varying amounts of time in the warehouse on the days that the three cars in question arrived. Although White drove the car upon which

---

1. 18 U.S.C. § 2313 provides that:

    Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

Count I is based (a 1977 Pontiac), Thomas and Roberts accompanied the car into the warehouse and Thomas then closed the door. Maddox arrived later that day. Agents eventually recovered the engine block and transmission of the Pontiac. Similar evidence was presented on Count II. Roberts drove the car (a 1976 Cadillac) to the warehouse. Maddox arrived with Roberts (in a separate car) and accompanied the Cadillac into the warehouse. Thomas arrived soon thereafter and all three then stayed in the warehouse for several hours. Agents recovered the Cadillac's transmission and engine during their search. The car upon which Count IV is based (a 1978 Mercury) was also driven by White. Maddox arrived contemporaneously, in a separate car. All four defendants were in the warehouse during the course of the day and at 3:00 P.M. agents, executing the search warrant, found the Mercury partially disassembled.

■ In reviewing the sufficiency of the evidence we must determine whether, viewing the evidence in the light most favorable to the Government, there is substantial evidence to support the verdict. *United States v. Castenada*, 555 F.2d 605, 608 (7th Cir.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 152, 54 L.Ed.2d 113 (1977). We conclude that there was sufficient evidence presented to support the verdict against Thomas, Maddox, and Roberts for each of the three counts in question. The Government, to prove a violation of Section 2313, must demonstrate that "(1) the motor vehicle involved was stolen; (2) the defendant knew that the motor vehicle had been stolen; (3) the defendant concealed [or stored or received] the motor vehicle; (4) the motor vehicle involved was moving in interstate traffic at the time of the defendant's activities." *United States v. Brady*, 425 F.2d 309, 311 (8th Cir. 1970). All three cars in question were registered and owned in Illinois, were taken from Illinois without their owners' permission, and arrived at the warehouse within two days of their theft. Thus, the Government had no difficulty in proving the first and fourth elements of a Section 2313 violation. Moreover, the jury could

properly conclude beyond a reasonable doubt that the second and third elements were proven. The jury was properly instructed that the unexplained possession of recently stolen property is a proper basis for inferring knowledge that the property is stolen. The jury was also given instructions on joint and constructive possession and on aiding and abetting. The evidence presented, coupled with these instructions, more than adequately supports the jury's findings as to each defendant for each of the three counts in question. *See United States v. Wisniewski*, 478 F.2d 274 (2d Cir. 1973); *United States v. Stanley*, 433 F.2d 637 (5th Cir. 1970). Accordingly, the attacks by Thomas, Maddox and Roberts against the sufficiency of the evidence are without merit.

### B.

White's claim differs from those of Maddox, Thomas, and Roberts. Although he drove the cars involved in Counts I and IV, White was not seen either in or near the warehouse on the day that the car involved in Count II arrived (May 31). His total absence on this day strains the Government's claim of joint and constructive possession too far. The contrast between White's activity relating to Counts I and IV and his absence from the warehouse on May 31 serves to highlight the weakness of the case against him on Count II. *See United States v. Mahanna*, 461 F.2d 1110, 1115–18 (8th Cir. 1972). Accordingly, we reverse White's conviction on Count II.

### III.

■ The next claim, raised by both White and Thomas, is that the district court erred when it initially denied motions for acquittal on Counts V and VIII through XI. The district court reserved judgment on the motions, allowed the counts to go to the jury, and then granted the motions after the jury returned guilty verdicts on these counts. The error, it is contended, is due to the fact that these counts were unsupportable as a matter of law and that it was

prejudicial to allow the jury to even consider them. The Government's evidence in support of the counts consisted of auto parts found by agents executing the search warrant. The district court's action was taken to preserve for appeal the Government's claim that auto parts can be considered a "motor vehicle" for purposes of Section 2313. The Government does not appeal the district court's ruling that parts alone are not a sufficient basis for a conviction under Section 2313 and the court's decision to grant the motions for acquittal.

The claims of prejudice amount to no more than a contention that the jury was incapable of properly evaluating the evidence presented on nine counts against four defendants. We find such a contention to be unpersuasive. *See, e. g., United States v. Austin*, 462 F.2d 724, 735 (10th Cir.), *cert. denied*, 409 U.S. 1048, 93 S.Ct. 518, 34 L.Ed.2d 501 (1972) (jury's verdict in complicated, multicount securities fraud case upheld). We have no reason to believe that the jury's consideration of Counts V and VIII through XI somehow confused them or tainted their deliberations on the remaining counts. The jury was properly instructed that each count be considered separately. *See United States v. Braverman*, 522 F.2d 218, 223 (7th Cir.), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975). The jury's acquittal of the defendants on Count II demonstrates the jury's ability to evaluate each count separately. Finally, the Government presented sufficient evidence to support the convictions on Counts I, II and IV. Part II A, *supra*. Accordingly, any error committed by the district court in its initial decision to deny the motions for acquittal was harmless. *See United States v. Castro*, 476 F.2d 750 (9th Cir. 1973).

### IV.

■■ Defendants Maddox and Thomas next claim that the district court erred in denying motions for severance pursuant to Fed.R.Crim.P. 14. In these circumstances, severance is a matter "squarely within the discretion of the trial judge." *United States v. Tanner*, 471 F.2d 128, 137 (7th

Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972). Moreover, the burden of proving prejudicial joinder is upon the defendants and requires more than merely showing that severance might have improved the defendants' chances for acquittal. *Id. See also Tillman v. United States*, 406 F.2d 930, 935 (5th Cir.), *vacated in part on other grounds, cert. denied in remaining part*, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969). In the present case the only bases for the claims of prejudice are the convictions of all four defendants, the existence of some disparity in the level of illegal activities engaged in by the defendants, and the fact that the jury had before it nine counts against four defendants. However, these factors warrant neither a finding that the district court abused its discretion nor a ruling that there was sufficient danger of prejudice to merit reversal. The district court properly denied the motions to sever.

### V.

■ Another argument (raised by Thomas) is that the district court erred in admitting evidence which was not described in the search warrant, but which was seized by agents while executing the warrant. The district court ruled that the agents' presence in the warehouse was lawful, that the discovery of the additional evidence was inadvertent, and that the incriminating nature of the evidence was immediately apparent. The court went on to hold that *United States v. Schire*, 586 F.2d 15 (7th Cir. 1978), permitted the seizure pursuant to the plain view exception to the warrant requirement. Thomas, on the other hand, contends that the plain view exception is inapplicable because the incriminating nature of the evidence seized was not immediately apparent.

The district court properly admitted the evidence. As noted in *Schire*, the "immediately apparent" requirement prevents officers "from using the pretext of 'plain view' to conduct general inventory searches for items that may have a suspect character in a context or for reasons unknown to offi-

cers when they initiated their legitimate, limited search." 586 F.2d at 18. This court went on to state that "[w]e do not interpret the 'immediately apparent' requirement to connote apparent at first glance, but rather, apparent without other information than that which the officers properly possessed before the search was over." *Id.* at 19. In the present case agents knew that stolen cars were being driven into the warehouse, that cars were being cut apart inside the building, and that there was no equipment for the repair or assembly of cars in the warehouse. *See* Part VII, *infra.* Agents entered with a warrant to seize specific stolen cars and found parts from numerous autos. The incriminating nature of the parts seized was "immediately apparent" and the seizure was properly within the scope of the plain view doctrine.

## VI.

■ It is also contended (by White and Maddox) that the admission into evidence of certain photographs was prejudicial. The photographs are divided into two groups: one group depicts various defendants in and near the Klisiak warehouse, while the other group depicts auto parts found by FBI agents during their execution of the search warrant. It is argued that the photographs did not prove culpability, but that they did prejudice the jury and cause them to improperly associate White and Maddox with the illegal activity occurring within the warehouse. This argument is without merit. According to Fed.R.Evid. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Furthermore, except as otherwise provided, "[a]ll relevant evidence is admissible." Fed. R.Evid. 402. In light of the questions raised in this case about the defendants' presence in the warehouse and the nature of the activities occurring therein, the photographs were clearly relevant. The next determination is whether the evidence should have been excluded pursuant to Fed. R.Evid. 403, which prohibits the admission

of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." The defendants fail to show how these photographs were *unfairly* prejudicial. The photographs were not likely to inflame the emotions of the jury. *See, e. g., United States v. Cartano,* 420 F.2d 363 (1st Cir.), *cert. denied,* 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970) (vivid pictures of murder victim's wounds admissible). Nor did the photos improperly imply the defendants' guilt to the jury. *See, e. g., United States v. Weir,* 575 F.2d 668 (8th Cir. 1978) (evidence of an attempt by the defendant to kill a suspected informant was considered improper). The defendants overlook the fact that all evidence is "inherently prejudicial" and that only "unfair prejudice, *substantially* outweighing probative value . . . permits exclusion of relevant matter under Rule 403." *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979) (emphasis in original). These photos were relevant evidence properly admitted by the district court.

## VII.

■ The final group of claims is raised by Maddox in a supplemental *pro se* brief. Maddox' first argument is that Charles Foster, one of the jurors, was prejudiced. Our examination of the record reveals no such prejudice. Mr. Foster was a neighbor of Assistant United States Attorney Richard Hanning. Hanning was not involved in the prosecution of this case and both Hanning and Foster were questioned about their relationship before all four defendants and defense counsel. Hanning stated that Foster was a neighbor and a friend and that Hanning did not discuss his work with Foster. Foster stated that he would not be influenced by his relationship with Hanning. The Court then admonished Foster not to mention these matters to the other jurors and then denied a motion by Thomas' counsel to have Foster removed for cause. The district court's action was proper. There is nothing in the record to indicate that Foster was prejudiced. *See United*

States v. Riley, 544 F.2d 237 (5th Cir. 1976), cert. denied, 430 U.S. 932, 97 S.Ct. 1554, 51 L.Ed.2d 777 (1977).

Maddox' next claim is that statements made by White's attorney prejudiced Maddox. In the statement, made during closing arguments, White's attorney conceded that the Government had probably proven its case against White as to Count IV. The statement, however, made no reference to Maddox' culpability. Maddox' claim of prejudice, therefore, assumes that the jury was unable to separately evaluate the evidence as to each count against each defendant. We have already rejected this argument. See Parts IV, VI, supra.

The final claim raised is that FBI agent Allison improperly testified about his knowledge and experience in the auto repair business. Allison testified that he had worked at such a shop to finance his college education and that, as a hobby, he had rebuilt several cars in auto repair shops. Based upon his experiences and upon his observations made while executing the search warrant on Klisiak's warehouse, Allison testified that the defendants did not appear to have been operating an auto repair shop. Allison noted that the only equipment in the warehouse was for the taking apart of cars and that there was no equipment for the assembling, repairing or painting of cars. Allison's testimony was relevant and properly admitted by the district court. None of the attorneys representing the defendants objected to Allison's testimony. The testimony was relevant and was based on Allison's first-hand knowledge and observations. Fed.R.Evid. 602, 701. Allison's testimony remained unshaken by cross-examination and his observations and perceptions remain unchallenged.

For the foregoing reasons we affirm the convictions of Thomas, Roberts and Maddox on all three counts. We also affirm White's conviction on Counts I and IV, reverse his conviction on Count II, and remand to the district court to vacate White's sentence on Count II.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.